Filed 10/10/22  In re D.E. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re D.E., a Person Coming Under the Juvenile Court Law. | B317690 (Los Angeles County Super. Ct. No. 18CCJP03544) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>D.K.,<br><br>　　　Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Martha Matthews, Judge.  Affirmed.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

D.K. (mother) appeals from juvenile court orders denying a Welfare and Institutions Code section 288[1] petition and terminating parental rights as to D.E., who was three years old at the time.  Mother's sole argument on appeal is that the juvenile court's orders must be reversed because the juvenile court had information that triggered a further duty to inquire about D.E.'s status as an Indian child under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).  (See § 224.2, subd. (e)(1).)

Based on our opinion in *In re Austin J.* (2020) 47 Cal.App.5th 870, 888-889 (*Austin J.*), we disagree with mother's assertion.  We will affirm the trial court's order.

## BACKGROUND

Because mother's only contention on appeal is that the juvenile court erred by failing to order a further inquiry into D.E.'s status as an Indian child under ICWA, we limit our discussion of the background here to facts related to that contention.

_____

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise noted.

2

The Los Angeles County Department of Children and Family Services (DCFS) filed a petition under section 300 on June 4, 2018 alleging that D.E., who was two months old at the time, came under the jurisdiction of the juvenile court. DCFS attached a Judicial Council Form ICWA-010(A) to the petition stating that it had made an Indian child inquiry. DCFS checked a box beside the words, "The child may have Indian ancestry," but did not check any other boxes on the form. In its detention report, DCFS stated that D.E.'s father, who is not a party to this appeal, "reported that his great grandmother has Native American Indian ancestry but reported that he does not know what tribe."

On June 5, 2018, father filed a Judicial Council form ICWA-020 and checked a box beside the words, "I may have Indian ancestry." The form provided no other information regarding D.E.'s potential Indian ancestry. Father did not check a box next to the words, "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe," "The child is or may be a member of, or eligible for membership in, a federal recognized Indian tribe," or "One or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe," and left blank spaces beside requests for further information about the names of tribes and the name and relationship of ancestors who might be members of a federally recognized tribe.

At the detention hearing, the juvenile court asked father for more information regarding his ICWA-020 form. Father told the juvenile court that he was "not sure" what tribe his great-grandmother might have been a member of, that his great-grandmother had passed away, and that there were no other

3

relatives or older family members who might have more information. The trial court instructed DCFS to "continue to make inquiries," but concluded that, "at this time, there does not appear to be any reason the [ICWA] applies."

D.E.'s paternal grandmother appeared at a hearing on June 8, 2018, and the juvenile court asked her whether she "kn[ew] anything more about possible Indian heritage in the family." Paternal grandmother told the juvenile court that she did not know what tribe. The juvenile court ordered DCFS to "interview [father] and paternal grandmother, find all information they may have about, for example, the name, place, and date of birth of the paternal great-grandmother, obtain all information they can obtain, and then comply with ICWA notice requirements."

On July 6, 2018, mother filed a Judicial Council ICWA-020 form. On her form, she checked a box beside the words, "I have no Indian ancestry as far as I know." At a hearing on the same date, the juvenile court asked mother if she had "any American Indian heritage." Mother's counsel responded, "[s]he does not."[2] The juvenile court's July 6, 2018 order states: "The Court does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the [Bureau of Indian Affairs]. Parents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status."

DCFS's remaining reports in the case generally indicate that ICWA is not applicable. The record indicates, however, that DCFS continued to search for information. DCFS attempted to

---

[2] The record indicates that mother held a Ukrainian passport and immigrated to the United States from Ukraine in 2009.

4

contact father's aunt using three different phone numbers it found in a database search; the numbers were either disconnected or not current. And a social worker sent letters to the aunt's last known address. At one point, a social worker attempted to contact the aunt at another phone number, but the person who answered the telephone hung up on the social worker.

The juvenile court denied mother's section 388 petition and terminated parental rights at a section 366.26 hearing on December 21, 2021.

Mother filed a timely notice of appeal.

## DISCUSSION

Mother's only contention on appeal is that the information father provided about his potential Indian ancestry triggered a duty of further inquiry for the juvenile court, and the juvenile court erred by not requiring the further inquiry.

"The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) "At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

Pertinent to this appeal, "[i]f the court, social worker, or probation officer has reason to *believe* that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to *know* that the child is an

Indian child, the court, social worker, or probation officer shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e), italics added.) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)

We view our opinion in *Austin J.*, *supra*, 47 Cal.App.5th 870 as dispositive.

In *Austin J.*, the juvenile court asked mother at a detention hearing whether "she had 'any Native American Indian ancestry.' She responded, 'I was told that my mother had Cherokee,' and said her 'family in Little Rock, Arkansas' would have more information. The court ordered DCFS 'to investigate Mother's possible ICWA connection and to notify the appropriate Cherokee nation and the appropriate federal agencies.' [¶] On the same day, Mother filed a parental notification of Indian status . . . stating that the child 'may have Indian ancestry'; namely, Cherokee, through her grandmother, who is deceased." (47 Cal.App.5th at p. 878.)

"Two days after the detention hearing, a social worker called Mother. Mother told the social worker that 'she may have [a] connection to the Cherokee or other tribes as well as having Creole heritage.' She said that 'she did not know if she was registered with any tribe.' The possible Cherokee heritage was on her mother's side of the family through her maternal grandmother and maternal grandfather. Mother told the social

worker that her maternal aunt might have additional information.

"The social worker spoke with Mother's maternal aunt by telephone the same day. The maternal aunt reported that her mother (i.e., Mother's maternal grandmother) 'may have had Cherokee heritage,' and she was not aware of other possible tribal heritage. She said that Mother's maternal grandfather 'possibly had heritage but that she did not know what tribe.' She did not know if anyone in the family had attended an Indian school, lived on a reservation, or been treated at an Indian clinic.

"In a jurisdiction/disposition report filed on May 29, 2019, DCFS reported that ICWA 'does or may apply,' and that the court 'was informed that there may be some Cherokee Native American/Indian heritage in [Mother's] background. [DCFS] was ordered to investigate said claim.' The report included the social worker's reports of her conversations with Mother and Mother's maternal aunt regarding Indian heritage." (*Austin J.*, *supra*, 47 Cal.App.5th at p. 878.) The father in *Austin J.* denied having any "Native American ancestry." (*Id.* at pp. 878-879.)

On that record, as to each of the children, the juvenile court stated that the court " 'does not have a reason to know that this is an Indian child, as defined under ICWA, and does not order notice to any tribe or the [Bureau of Indian Affairs].' " (*Austin J.*, *supra*, 47 Cal.App.5th at p. 879.)

We found no error.

We first concluded that the mother's statements in that case "provided no reason to *know* that any of the children are Indian children under the criteria in section 224.2, subdivision (d) . . . ." (*Austin J.*, *supra*, 47 Cal.App.5th at p. 888.) We explained that "a *belief* that a child is an Indian child presumably

7

requires a lesser degree of certitude or factual support than *knowing* a child is an Indian child." (*Ibid.*) Nevertheless, we concluded that "the duty of further inquiry still requires a legally sufficient reason for that belief. The statutorily-defined reason to know a child is an Indian child is based on a logical and reasonable relationship between a fact—such as the child's living on a reservation or having been a ward of a tribal court—and the resulting knowledge that the child is an Indian child. (§ 224.2, subd. (d).) So too must a logical and reasonable relationship connect facts with a resulting belief that a child is an Indian child for the purpose of the statute. *Information about a tribal connection that 'is too vague, attenuated and speculative' will not support a 'reason to believe the children might be Indian children.'* [Citation.]" (*Id.* at p. 888, italics added.)

We explored the statements in *Austin J.* further. "Mother's statement that she 'may have Indian ancestry' and had been 'told that [her] mother had Cherokee [ancestry],' and the similar statement by Mother's aunt that she 'may have had Cherokee heritage,'" we said, "are insufficient to support a reason to believe the children are Indian children as defined in ICWA. At most, they suggest a mere possibility of Indian ancestry. Indian ancestry, heritage, or blood quantum, however, is not the test; being an Indian child requires that the child be either a member of a tribe or a biological child of a member. [Citations.] Being a member of a tribe depends 'on the child's political affiliation with a federally recognized Indian Tribe,' not the child's ancestry. [Citations.] Consequently, 'many racially Indian children' do not fall within ICWA's definition of an Indian child, while others may be Indian children even though they are 'without Indian blood.' [Citation.] *Indian ancestry, without more, does not provide a*

*reason to believe that a child is a member of a tribe or is the biological child of a member. Here, there is nothing more . . . .*" (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 888-889, italics added.)

"In short," we said, "the fact disclosed through the social worker's initial inquiry regarding the possibility that the children are Indian children—that Mother may have Cherokee ancestry— is insufficient by itself to provide a reason to believe that either the children or their parents are members of, or eligible for membership in, an Indian tribe. *Therefore, the statute imposed no duty to make further inquiry.*" (*Austin J.*, *supra*, 47 Cal.App.5th at p. 889, italics added.)

After our opinion in *Austin J.*, the Legislature clarified that "[t]here is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (Stats. 2020, ch. 104, § 15.) We explored those grounds in *Austin J.* in connection with our conclusion that the dependency court had no reason to *know* an Indian child was involved in the proceedings. (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 884, 886.)

Section 224.2's post-*Austin J.* amendment gives a dependency court reason to *believe* a child is an Indian child if there is information "that indicates, but does not establish" that: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or

9

private agency, or a member of the child's extended family informs the court that the child is an Indian child. [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village. [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subds. (d), (e)(1).)

Here, father and his mother told the juvenile court that the father's great-grandmother, who was deceased, may have been a member of an Indian tribe, but that there was no living person who had any more information about whether she actually was or what tribe she might have been associated with. Although the post-*Austin J.* amendment to section 224.2 confirms our statement in *Austin J.* that "a *belief* that a child is an Indian child presumably requires a lesser degree of certitude or factual support than *knowing* a child is an Indian child," (*Austin J.*, *supra*, 47 Cal.App.5th at p. 888), the information that father and his mother provided here does not "indicate . . . the existence of" any of the grounds listed in subdivision (d).

As in *Austin J.*, father's and mother's responses to the juvenile court's and DCFS's ICWA inquiries were insufficient to provide any reason to believe that D.E. or either parent was a member of, or eligible for membership in, an Indian tribe. The

10

statute imposed no duty to make further inquiry.  (See *Austin J.*, *supra*, 47 Cal.App.5th at p. 889.)

## DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.

KELLEY, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.